**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | Case No. 3:15-cr-00169-1 |
| | : | |
| v. | : | |
| | : | Judge Thomas M. Rose |
| CHARLES M. MCBEATH, | : | |
| | : | |
| Defendant. | : | |

---

**ENTRY AND ORDER DENYING DEFENDANT'S MOTION FOR
COMPASSIONATE RELEASE (DOC. 183)**

---

This case is before the Court on the Motion for Compassionate Release (Doc. 183) (the "Motion"), filed by Charles M. McBeath ("McBeath"). McBeath is currently incarcerated at Oxford FCI [Federal Correctional Institution] in Wisconsin. He asks the Court for compassionate release from his term of imprisonment because of his asserted medical ailments coupled with the general presence of COVID-19 in the federal prison system. (*Id.*) McBeath also filed various documents in support of the Motion. (Doc. 186.) The United States of America (the "Government") filed a Response to the Motion (Doc. 188) (the "Response"), in which the Government opposes the Motion. McBeath's counsel did not file a reply brief but did file a Notice indicating that she would not be filing a supplement to the Motion. (Doc. 187.) The matter is ripe for review.[1] For the reasons discussed below, the Court **DENIES** McBeath's Motion.

---

[1] Section 603(b) of the First Step Act, which was signed into law on December 21, 2018, modified 18 U.S.C. § 3582 to allow a defendant to bring a motion on his or her own behalf either "[1] after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [2] the lapse of 30 days from the receipt of such request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); Pub L. No. 115-391, 132 Stat. 5194; *see also United States v. Alam*, 960 F.3d 831, 833-34 (6th Cir. 2020) ("If the Director of the Bureau of Prisons does not move for compassionate release, a prisoner may take his claim to court only by moving for it on his own behalf. To do that, he must fully exhaust all administrative

1

I.   **BACKGROUND**

On July 28, 2016, the Government filed a twelve-count Indictment in this case; the grand jury indicted McBeath on eleven of those counts. (Doc. 66.) On or about January 4, 2017, pursuant to a plea agreement, McBeath pleaded guilty to Count 1 in the Indictment: conspiracy to possess with intent to distribute and distribute more than 100 grams of a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, and a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance. (*See* Docs. 66, 121, 124.) The Statement of Facts attached to the Plea Agreement states, in part:

> Beginning in at least March 2015 and continuing up to and including May 27, 2015, Charles M. McBeath (McBEATH) knowingly and intentionally conspired with other individuals to knowingly and intentionally possess with intent to distribute and distribute heroin, fentanyl, and cocaine in the Dayton, Ohio area.
>
> …
>
> During the course of the conspiracy, McBEATH and Spiva distributed drugs in the Dayton area which resulted in a number of overdoses, two of which were fatal. …
>
> The substance that was purchased from McBEATH and Spiva and used by [each of the two people who died] contained fentanyl. McBEATH accepts responsibility for causing the deaths of [the two people who died]. …
>
> On December 9, 2015, McBEATH was arrested in the Dayton area and found to be in possession of distribution quantities of heroin, fentanyl and cocaine. McBEATH intended to sell these substances for personal profit.
>
> During the course of his involvement, the relevant conduct attributable to McBEATH and reasonably foreseeable to him during the period of the conspiracy, was a quantity of fentanyl, a quantity of cocaine, and at least 100 grams of a mixture or substance containing a detectable amount of heroin.
>
> For the information of the Court, the parties agree and stipulate that the United

---

rights to appeal with the prison or wait 30 days after his first request to the prison," and "[p]risoners who seek compassionate release have the option to take their claim to federal court within 30 days, no matter the appeals available to them") (internal quotation marks omitted) (alterations adopted); *United States v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020) ("defendants now may bring reduction-of-sentence motions on their own once they exhaust any administrative remedies or wait 30 days from the date they request relief from the Bureau of Prisons"). Here, documents filed by McBeath indicate that he sent a request to the Warden, who denied the request. (*See* Doc. 186 at PageID 1048; Doc. 188 at PageID 1057.) Regardless, the Government does not contest exhaustion, so the Court proceeds with the understanding that McBeath could move for compassionate release on his own.

> States could prove at trial beyond a reasonable doubt that but for [each of the two people who died] using the mixture or substance containing a detectable amount of fentanyl, [their] death[s] would not have occurred….

(Doc. 124 at PageID 503-04.)

The Final Presentence Investigation Report ("PSI") regarding McBeath provided additional information about the circumstances of the offense, and it identified approximately seven prior adult criminal convictions and numerous other minor convictions. (PSI ¶¶ 22-42, 70-77.) McBeath's criminal history includes convictions for possession of a controlled substance, unlawful delivery of a controlled substance, and driving under the influence. (*Id.*) Additionally, the PSI indicated that McBeath previously incurred multiple probation violations. (*Id.* at ¶ 73) The PSI also indicated that McBeath accepted responsibility for his actions and showed remorse for committing the offense. (*Id.* at ¶ 50.)

In June of 2017, this Court sentenced McBeath to a 198-month term of incarceration and five years of supervised release with special conditions. (Docs. 144, 147.) McBeath is currently 39 years old and has an anticipated release date of December 27, 2029. *See* https://www.bop.gov/inmateloc.

## II. ANALYSIS

### A. Legal Standards

A district court has limited authority to modify a sentence. *United States v. Ruffin*, 978 F.3d 1000, 1003 (6th Cir. 2020) ("[s]ince the Sentencing Reform Act of 1984, federal law has generally prohibited a district court from modifying a term of imprisonment once it has been imposed") (alterations adopted) (internal quotation marks omitted). "Generally speaking, once a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Hammond*, 712 F.3d 333,

335 (6th Cir. 2013). Section 3582(c)(1)(A) grants such authority in certain limited circumstances. It provides, in part:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court … may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i).[2]

The decision to reduce a term of imprisonment pursuant to Section 3582(c)(1)(A) involves a three-step test, based on three substantive requirements. *United States v. Jones*, 980 F.3d 1098, 1106-08 (6th Cir. 2020); 18 U.S.C. § 3582(c)(1)(A)(i). At step one, a court must find that extraordinary and compelling reasons warrant a sentence reduction.[3] *Jones*, 980 F.3d at 1107-08. At step two, a court must find that such a reduction is consistent with <u>applicable</u> policy statements issued by the Sentencing Commission. *Id.* at 1108. At step three, a court must consider any applicable Section 3553(a) factors and, in its discretion, find that the reduction authorized by steps one and two is warranted in whole or in part under the particular circumstances of the case. *Id.* A court may deny a compassionate release motion when any of the three substantive requirements is lacking and need not address the others. *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021). However, a court cannot grant such a motion unless the court addresses "all three steps." *Id.*

Regarding the first step, "Section 3582(c)(1)(A) does not define 'extraordinary and compelling reasons.'" *Ruffin*, 978 F.3d at 1004. Congress instructed that "[r]ehabilitation of the

---

[2] Subpart (ii) of this portion of the statute provides "a separate basis for compassionate release tied to the defendant's age and years in prison." *Ruffin*, 978 F.3d at 1003.
[3] "Or, alternatively, whether the defendant fulfills the requirements of § 3582(c)(1)(A)(ii)." *Jones*, 980 F.3d at 1108 n. 12.

defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). But apart from this instruction, "Congress delegated to the Sentencing Commission the responsibility of describing what should be considered extraordinary and compelling reasons for sentencing reduction, including the criteria to be applied and a list of specific examples by promulgating general policy statements regarding the sentencing modification provisions in § 3582(c)(1)(A)." *Jones*, 980 F.3d at 1108-09 (alterations adopted) (internal quotation marks omitted). The Sentencing Commission's policy statement regarding compassionate release under Section 3582(c)(1)(A) resides in § 1B1.13 of the United States Sentencing Commission Guidelines Manual. *Id.* at 1109; U.S.S.G. § 1B1.13 ("Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)"). However, "the Commission has not updated § 1B1.13 since the First Step Act's passage in December 2018." *Jones*, 980 F.3d at 1109. Therefore, and for reasons more fully explained in *Jones*, the Sixth Circuit held that—until the Sentencing Commission updates § 1B1.13 to reflect the First Step Act—district courts "have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13" in cases where an incarcerated person files a motion for compassionate release.[4] *Id.* at 1109-11 ("[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion").

---

[4] In *Elias*, while not mandating that future courts apply the two-part test used by the district court in that case, the Sixth Circuit held that the district court did not abuse its discretion in applying a "two-part test for deciding when the concern of contracting COVID-19 becomes an extraordinary and compelling reason for compassionate release: (1) when the defendant is at high risk of having complications from COVID-19 and (2) the prison where the defendant is held has a severe COVID-19 outbreak." *Elias*, 984 F.3d at 520-21 (the district court did not abuse its discretion in relying on that two-part test; the district court properly considered the Centers for Disease Control and Prevention (CDC) guidance in effect at the time, a scientific journal, and information from the BOP concerning the number of reported COVID-19 cases at the prison). Additionally, the Sixth Circuit held that a district court may deny a motion for compassionate release if the defendant does not provide any records in the motion to support his or her claimed medical ailment(s). *Id.*

5

Regarding the second step, again, the Sentencing Commission's policy statement regarding compassionate release under 18 U.S.C. § 3582(c)(1)(A) resides in U.S.S.G. § 1B1.13. *Jones*, 980 F.3d at 1109. However, the Sixth Circuit held in *Jones* that "the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release." *Id.*; *see also Elias*, 984 F.3d at 518 ("§ 1B1.13 is not applicable to inmate-filed compassionate-release motions"). Thus, U.S.S.G. § 1B1.13 currently is not an "applicable policy statement[] issued by the Sentencing Commission" in such cases. 18 U.S.C. § 3582(c)(1)(A); *Jones*, 980 F.3d at 1101, 1109. So now, "where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry," at least until the Sentencing Commission updates § 1B1.13 to reflect the First Step Act. *Jones*, 980 F.3d at 1111.

Regarding the third step, "[d]istrict courts should consider all relevant § 3553(a) factors before rendering a compassionate release decision." *Jones*, 980 F.3d at 1114. The factors set forth in Section 3553(a) "consider such things as the characteristics of the defendant, the nature of the offense, and various penological goals, such as the need to promote respect for law and to protect the public." *Ruffin*, 978 F.3d at 1005. More specifically, 18 U.S.C. § 3553(a) states:

> (a) Factors to be considered in imposing a sentence.--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
>
>     (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
>     (2) the need for the sentence imposed--
>
>         (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
>         (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for--

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--

        (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

        (ii) that, except as provided in section 3742(g) [18 U.S.C. § 3742(g)], are in effect on the date the defendant is sentenced; or

    (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5) any pertinent policy statement--

    (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

    (B) that, except as provided in section 3742(g) [18 U.S.C. § 3742(g)], is in effect on the date the defendant is sentenced[;]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).  Among the variety of items that courts have considered in this step are conditions at the place of incarceration, the defendant's health issues, whether the defendant is receiving medical treatment for his or her health issues, the defendant's behavior in prison, the type of offense(s) for which the defendant was convicted, whether the defendant had prior criminal convictions (and, if so, how many and the seriousness of such crimes), whether the defendant had prior juvenile convictions, whether the defendant previously complied with any presentence or post-incarceration conditions, the amount of the sentence that the defendant has served to date, whether the court varied downward from the guidelines range when imposing the sentence, whether the defendant has had a drug addiction, the defendant's successful participation in substance abuse programming or other rehabilitation efforts while incarcerated, the defendant's successful participation in educational or vocational training while incarcerated, and whether the defendant took responsibility for his or her actions.  *Jones*, 980 F.3d at 1115; *Ruffin*, 978 F.3d at 1008-09.  Of course, not all of these items will be applicable or relevant (or known to the court) in all cases, and other items may be applicable or relevant.  *Id.*; *see also* 18 U.S.C. § 3582(c)(1)(A)(i) (a court should consider "the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable").

Finally, "Congress's use of 'may' in § 3582(c)(1)(A) dictates that the compassionate release decision is discretionary, not mandatory."  *Jones*, 980 F.3d at 1106; *see also* 18 U.S.C. § 3582(c)(1)(A)(i) (stating that a court "may" reduce the term of imprisonment); *Ruffin*, 978 F.3d at 1005 (a "district court has substantial discretion" in deciding whether to reduce a term of imprisonment pursuant to Section 3582(c)(1)(A)); *Elias*, 984 F.3d at 518 (a district court may reduce the term of imprisonment if all three of the substantive requirements are met, "but need not do so").

### B. Application

McBeath asks that the Court grant the Motion and reduce his sentence. (Doc. 183.) He argues that he should be released because "Covid-19 has become widespread in the Federal prison system" and his "health is bad." (*Id.* at PageID 1031, 1034.) McBeath says that he has a good prison record. (*Id.* at PageID 1034.) Additionally, he asserts that he suffers from hypertension, obesity, and pre-diabetes. (*Id.* at PageID 1034-35.) He also says that he has an acute upper respiratory infection and his heart sometimes beats too fast. (*Id.*) In terms of documentation to support his alleged medical ailments, McBeath only provides records that indicate he had an "[a]cute upper respiratory infection" in March of 2018 (Doc. 183-1 at PageID 1036), that he had hypertension as of March of 2018 (*id.* at PageID 1038), and he weighed 346 pounds as of August of 2017 (*id.* at PageID 1040). Additionally, the PSI indicated that, as of April of 2017, McBeath stood 5'9" tall and weighed 300 pounds and that he reported being diagnosed with high blood pressure in 2013. (PSI at ¶ 98.)

In response, the Government makes three arguments for denial. (Doc. 188.) First, that the BOP has taken significant measures to protect inmates from COVID-19 and has denied McBeath's request for a sentencing reduction based on its judgment. Second, that McBeath has failed to show that his release is warranted under Section 3582(c)(1)(A). Third, that relief is not warranted based on the factors in Section 3553(a).

Regarding step one, for the purposes of the Court's analysis, the Court will <u>assume</u>—without deciding—that McBeath has demonstrated that suffering from his stated medical ailments during the current COVID-19 pandemic presents an extraordinary and compelling reason for reducing the term of imprisonment (and that he is suffering from such ailments).[5] Regarding step

---

[5] The Court emphasizes it has <u>not</u> actually found that any circumstance (separately or combined) alleged by McBeath qualifies as an "extraordinary and compelling reason[] [that] warrant[s] a reduction" of his sentence. 18 U.S.C §

9

two, given that McBeath (an incarcerated person) filed the Motion, the Court "may skip"—and does skip—this step, in accordance with the Sixth Circuit's *Jones* decision. *Jones*, 980 F.3d at 1111.

However, that does not end the Court's inquiry. There is still the third step: consideration of any applicable Section 3553(a) factors and determination of whether, in the Court's discretion, the reduction is warranted in whole or in part under the particular circumstances of this case. *Elias*, 984 F.3d at 519; *Jones*, 980 F.3d at 1108; 18 U.S.C. § 3582(c)(1)(A)(i); *see also Ruffin*, 978 F.3d at 1005 ("[e]ven if [the first two requirements] are met, … a district court may still deny relief if it finds that the applicable § 3553(a) factors do not justify it") (internal quotation marks omitted).

The Court has considered the Section 3553(a) factors to the extent that they are applicable. 18 U.S.C. § 3582(c)(1)(A)(i). This includes that the Court considered McBeath's history and characteristics, such as his asserted behavior in prison. *See* 18 U.S.C. § 3553(a)(1). McBeath also accepted responsibility for his actions. And, the Court acknowledges the challenging conditions at Oxford FCI during the current COVID-19 pandemic and McBeath's asserted health issues. *See* 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(D).

Yet, the "nature and circumstances of the offense" do not favor early release. *See* 18 U.S.C. § 3553(a)(1). The offense for which McBeath is currently incarcerated involved a conspiracy to distribute heroin, fentanyl, and cocaine. (Doc. 66, 124, 147.) These are dangerous, potentially lethal, controlled substances. *United States v. Harris*, 774 F. App'x 937, 941 (6th Cir. 2019) (quoting the United States Sentencing Commission in U.S.S.G. App. C, amendment 807 (2018) concerning U.S.S.G. § 2D1.1 as stating that, "[b]ecause of fentanyl's extreme potency, the risk of

---

3582(c)(1)(A)(i). As shown herein, the Court need not actually conduct that analysis to decide the Motion. *See, e.g., Jones*, 980 F.3d at 1108 (affirming district court's decision, which had "assumed for the sake of argument that extraordinary and compelling reasons existed" to reduce the defendant's term of imprisonment, proceeded to weigh several § 3553(a) factors, and then denied the motion for compassionate release).

overdose is great, particularly when the user is inexperienced or unaware of what substance he or she is using"); *United States v. Taylor*, 449 F. Supp. 3d 668, 673 (E.D. Ky. 2020) (fentanyl is "an exceptionally dangerous drug"); *United States v. Pooler*, No. 3:18-cr-137, 2020 U.S. Dist. LEXIS 224934, 2020 WL 7046964, at *8 (S.D. Ohio Dec. 1, 2020) ("[f]entanyl in particular is a dangerous, and potentially lethal, controlled substance"). In fact, McBeath admitted that, during the conspiracy, he and his co-conspirator "distributed drugs in the Dayton area which resulted in a number of overdoses, two of which were fatal." (Doc. 124 at PageID 503.) He also admitted that the substance that he sold and that caused two deaths "contained both heroin and fentanyl." (*Id.*) He "accept[ed] responsibility for causing the deaths of" two individuals. (*Id.*) The Court finds that the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant do not favor early release. *See* 18 U.S.C. § 3553(a)(2)(A)-(C).

Additionally, McBeath's criminal history includes prior convictions that likewise involved controlled substances, and the PSI indicates that he previously violated post-incarceration conditions. (PSI ¶¶ 71-73.) This concerns the Court. *See* 18 U.S.C. §3553(a)(1), (a)(2)(A), (a)(2)(B), (a)(2)(C), (a)(6). Furthermore, McBeath still has a substantial amount of his sentence remaining. *See* 18 U.S.C. § 3553(a)(2)(A), (a)(2)(B), (a)(6); *Ruffin*, 978 F.3d at 1008 (considering the amount of the sentence that the petitioner had served); *United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) ("the need to provide just punishment, the need to reflect the seriousness of the offense, and the need to promote respect for the law permit the court to consider the amount of time served in determining whether a sentence modification is appropriate"). Releasing McBeath with so much time remaining on his sentence "minimizes both the impact of [his] crime

11

and seriousness of [his] offense." *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020). Having considered the factors set forth in section 3553(a) to the extent that they are applicable, the Court finds that any reduction in the term of imprisonment is not warranted.

Thus, even if steps one and two authorized the requested reduction, the Court finds that consideration of the applicable Section 3553(a) factors calls for denial of the Motion. *Jones*, 980 F.3d at 1102 (affirming decision to deny motion for compassionate release where "the district court found for the sake of argument that an extraordinary and compelling circumstance existed in [defendant's] case but that the § 3553(a) factors counseled against granting compassionate release"); *United States v. Pawlowski*, 967 F.3d 327, 330 (3d Cir. 2020) (affirming denial of a compassionate release motion where "the District Court reasonably concluded that several of the § 3553(a) factors—including … the need to reflect the seriousness of the offense, promote respect for the law, and afford adequate deterrence—counsel against compassionate release …").

### III.  CONCLUSION

Although the Court recognizes McBeath's asserted medical ailments, commends his apparent efforts to better himself while incarcerated (*see, e.g.,* Doc. 183 at PageID 1034), and is sympathetic to his arguments about the fear of contracting COVID-19, the circumstances here do not warrant a reduction in the term of imprisonment pursuant to Section 3582(c)(1)(A). For the reasons stated above, the Court **DENIES**, without prejudice, the Motion for Compassionate Release (Doc. 183).

**DONE** and **ORDERED** in Dayton, Ohio, this Tuesday, April 6, 2021.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

12