UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | |
| Plaintiff, : | Case No. 3:15-cr-169 |
| : | |
| v.  : | |
| : | Judge Thomas M. Rose |
| CHARLES M. MCBEATH, : | |
| : | |
| Defendant. : | |

---

**ENTRY AND ORDER DENYING DEFENDANT'S MOTION PURSUANT TO 18
U.S.C. § 3582(c)(1)(A) (DOC. NO. 198)**

---

This case is before the Court on the Motion Pursuant to 18 U.S.C. § 3582(c)(1)(A) (Doc. No. 198) (the "Motion"), filed by Charles M. McBeath ("McBeath"). McBeath is currently incarcerated at Duluth FPC in Minnesota. He asks the Court for compassionate release from his term of imprisonment. More specifically, he asks that this Court grant him compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) as amended by § 603 of the First Step Act (FSA) of 2018 (P.L. 115-391). (Doc. No. 198 at PageID 1115.) For the reasons discussed below, the Court **DENIES** McBeath's Motion.

**I.     BACKGROUND**

On July 28, 2016, the Government filed a twelve-count Indictment in this case; the grand jury indicted McBeath on eleven of those counts. (Doc. 66.) On or about January 4, 2017, pursuant to a plea agreement, McBeath pleaded guilty to Count 1 in the Indictment: conspiracy to possess with intent to distribute and distribute more than 100 grams of a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, and a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance. (*See* Docs. 66,

1

121, 124.) The Statement of Facts attached to the Plea Agreement states, in part:

> Beginning in at least March 2015 and continuing up to and including May 27, 2015, Charles M. McBeath (McBEATH) knowingly and intentionally conspired with other individuals to knowingly and intentionally possess with intent to distribute and distribute heroin, fentanyl, and cocaine in the Dayton, Ohio area.
>
> …
>
> During the course of the conspiracy, McBEATH and Spiva distributed drugs in the Dayton area which resulted in a number of overdoses, two of which were fatal. …
>
> The substance that was purchased from McBEATH and Spiva and used by [each of the two people who died] contained fentanyl. McBEATH accepts responsibility for causing the deaths of [the two people who died]. …
>
> On December 9, 2015, McBEATH was arrested in the Dayton area and found to be in possession of distribution quantities of heroin, fentanyl and cocaine. McBEATH intended to sell these substances for personal profit.
>
> During the course of his involvement, the relevant conduct attributable to McBEATH and reasonably foreseeable to him during the period of the conspiracy, was a quantity of fentanyl, a quantity of cocaine, and at least 100 grams of a mixture or substance containing a detectable amount of heroin.
>
> For the information of the Court, the parties agree and stipulate that the United States could prove at trial beyond a reasonable doubt that but for [each of the two people who died] using the mixture or substance containing a detectable amount of fentanyl, [their] death[s] would not have occurred….

(Doc. 124 at PageID 503-04.)

The Final Presentence Investigation Report ("PSI") regarding McBeath provided additional information about the circumstances of the offense, and it identified approximately seven prior adult criminal convictions and numerous other minor convictions. (PSI ¶¶ 22-42, 70-77.) McBeath's criminal history includes convictions for possession of a controlled substance, unlawful delivery of a controlled substance, and driving under the influence. (*Id*.) Additionally, the PSI indicated that McBeath previously incurred multiple probation violations. (*Id.* at ¶ 73) The PSI also indicated that McBeath accepted responsibility for his actions and showed remorse for committing the offense. (*Id.* at ¶ 50.)

In June of 2017, this Court sentenced McBeath to a 198-month term of incarceration and five years of supervised release with special conditions. (Docs. 144, 147.) McBeath is currently 39 years old and has an anticipated release date of December 27, 2029. (*See* FEDERAL BUREAU OF PRISONS INMATE LOCATOR, https://www.bop.gov/inmateloc (last visited April 8, 2022).)

McBeath filed two previous motions for compassionate release that were filed on June 11, 2020 (Doc. No. 180) and February 8, 2021 (Doc. No. 183). Both motions were subsequently denied by this Court. (Doc. No. 182; Doc. No. 189.) The instant Motion was filed on December 2, 2021 (Doc. No. 189) and counsel was assigned on December 16, 2021 (Doc. No. 199). Counsel declined to file a supplemental motion on March 1, 2022. (Doc. No. 203.) The Government responded on March 31, 2022. (Doc. No. 205.) McBeath did not file a reply. The matter is ripe for review.

## II. ANALYSIS

### A. Legal Standards

Section 3582(c)(1)(A), colloquially known as the "compassionate release" statute, grants authority, in certain limited circumstances, to modify a term of imprisonment after it has been imposed. It provides, in part:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court … may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i).[1]

---

[1] Subpart (ii) of this portion of the statute provides "a separate basis for compassionate release tied to the defendant's age and years in prison." *United States v. Ruffin*, 978 F.3d 1000, 1003 (6th Cir. 2020).

Therefore, a court may reduce a defendant's previously imposed term of imprisonment if it finds that three requirements are met: (1) "extraordinary and compelling reasons warrant such a reduction"; (2) the "reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and (3) the § 3553(a) factors, to the extent that they are applicable, support the reduction. 18 U.S.C. § 3582(c)(1)(A)(i); *see also United States v. Lemons*, 15 F.4th 747, 749 (6th Cir. 2021). On the other hand, a court may deny a compassionate release motion when any of the three substantive requirements is lacking and need not address the others.[2] *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021). Moreover, while a court may reduce the term of imprisonment if all three requirements are met, it "need not do so." *Id.*; *see also* 18 U.S.C. § 3582(c)(1)(A)(i) (stating that a court "may" reduce the term of imprisonment); *United States v. Jones*, 980 F.3d 1098, 1106 (6th Cir. 2020) ("Congress's use of 'may' in § 3582(c)(1)(A) dictates that the compassionate release decision is discretionary, not mandatory").

Regarding the third requirement, "§ 3582(c)(1)(A) instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by steps one and two is warranted in whole or in part under the particular circumstances of the case." *Jones*, 980 F.3d at 1108 (internal quotation marks omitted and alterations adopted); *see also United States v. Wright*, 991 F.3d 717, 719 (6th Cir. 2021) ("[d]istrict courts may place great weight on one sentencing factor when that weight is warranted") (internal quotation marks omitted). The factors set forth in Section 3553(a) consider such things as the nature of the offense, the circumstances of the offense, the history of the defendant, the characteristics of the defendant, "and

---

[2] However, courts currently omit the second requirement when an incarcerated person, as opposed to the Bureau of Prisons ("BOP"), files a motion seeking a sentence reduction. *Lemons*, 15 F.4th at 749. The Sixth Circuit has explained that, "where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry"—at least until the Sentencing Commission updates § 1B1.13 of the United States Sentencing Commission Guidelines Manual to reflect the First Step Act. *United States v. Jones*, 980 F.3d 1098, 1009-1111 (6th Cir. 2020) (explaining that passage of the First Step Act rendered § 1B1.13 inapplicable to cases where an imprisoned person files a motion for compassionate release).

various penological goals, such as the need to promote respect for law and to protect the public," as well as to reflect the seriousness of the offense, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. *United States v. Ruffin*, 978 F.3d 1000, 1005 (6th Cir. 2020); *see also* 18 U.S.C. § 3553(a).

### B. Application

McBeath asks the Court for a sentence reduction due to the widespread transmission of COVID-19 in the federal prison system. (Doc. No. 198 at PageID 1114.) McBeath further states that social distancing is not possible in prison and that prisoners are confined to their housing units 24 hours a day. (*Id*. at PageID 1115.) He further states that he has high blood pressure, a high BMI, Type II diabetes, and some respiratory issues. (*Id*. at PageID 1116.)

In response the Government argues that McBeath has not established an "extraordinary and compelling reason" justifying his release. (Doc. No. 205 at PageID 1137.) First, the Government argues that the BOP continues to take extraordinary measures to prevent the spread of COVID-19 and that there are currently no active COVID-19 cases at Duluth FCP. (*Id*. at 1138.) Second, the Government argues that McBeath has not identified any new health issues other than those previously put before this Court in his previous motions. (*Id*.) Finally, the Government argues the Defendant has presented no new evidence that alters the Court's evaluation of the Section 3553(a) factors. (*Id*. at PageID 1139.)

#### 1. Section 3582 Considerations

McBeath does not satisfy the Section 3582 requirements. Regarding step one, for the purposes of the Court's analysis, the Court will assume—without deciding—that McBeath has demonstrated that suffering from his stated medical ailments during the current COVID-19

5

pandemic presents an extraordinary and compelling reason for reducing the term of imprisonment (and that he is suffering from such ailments).[3] Regarding step two, given that McBeath (an incarcerated person) filed the Motion, the Court "may skip"—and does skip—this step, in accordance with the Sixth Circuit's *Jones* decision. *Jones*, 980 F.3d at 1111. Regarding the second requirement, given that McBeath (an incarcerated person) filed the Motion, the Court "may skip"—and does skip—this step, in accordance with the Sixth Circuit's *Jones* decision. *Jones*, 980 F.3d at 1111.

Regarding the third requirement, the Court has considered the parties' arguments and the Section 3553(a) factors to the extent that they are applicable. 18 U.S.C. § 3582(c)(1)(A)(i). This includes the Court's consideration of McBeath's history and characteristics. *See* 18 U.S.C. § 3553(a)(1). McBeath also accepted responsibility for his actions.

Yet, as the Government argues, McBeath has not offered any evidence to alter the Court's evaluation of the Section 3553(a) factors. The offense for which McBeath is currently incarcerated involved a conspiracy to distribute heroin, fentanyl, and cocaine. (Doc. 66, 124, 147.) These are dangerous, potentially lethal, controlled substances. *United States v. Harris*, 774 F. App'x 937, 941 (6th Cir. 2019) (quoting the United States Sentencing Commission in U.S.S.G. App. C, amendment 807 (2018) concerning U.S.S.G. § 2D1.1 as stating that, "[b]ecause of fentanyl's extreme potency, the risk of overdose is great, particularly when the user is inexperienced or unaware of what substance he or she is using"); *United States v. Taylor*, 449 F. Supp. 3d 668, 673 (E.D. Ky. 2020) (fentanyl is "an exceptionally dangerous drug"); *United States v. Pooler*, No.

---

[3] The Court emphasizes it has <u>not</u> actually found that any circumstance (separately or combined) alleged by McBeath qualifies as an "extraordinary and compelling reason[] [that] warrant[s] a reduction" of his sentence. 18 U.S.C § 3582(c)(1)(A)(i). As shown herein, the Court need not actually conduct that analysis to decide the Motion. *See, e.g., Jones*, 980 F.3d at 1108 (affirming district court's decision, which had "assumed for the sake of argument that extraordinary and compelling reasons existed" to reduce the defendant's term of imprisonment, proceeded to weigh several § 3553(a) factors, and then denied the motion for compassionate release).

3:18-cr-137, 2020 U.S. Dist. LEXIS 224934, 2020 WL 7046964, at *8 (S.D. Ohio Dec. 1, 2020) ("[f]entanyl in particular is a dangerous, and potentially lethal, controlled substance"). Indeed, McBeath admitted that, during the conspiracy, he and his co-conspirator "distributed drugs in the Dayton area which resulted in a number of overdoses, two of which were fatal." (Doc. 124 at PageID 503.) He also admitted that the substance that he sold and that caused two deaths "contained both heroin and fentanyl." (*Id.*) He "accept[ed] responsibility for causing the deaths of" two individuals. (*Id.*) The Court finds that the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant do not favor early release. *See* 18 U.S.C. § 3553(a)(2)(A)-(C).

Additionally, McBeath's criminal history includes prior convictions that likewise involved controlled substances, and the PSI indicates that he previously violated post-incarceration conditions. (PSI ¶¶ 71-73.) This concerns the Court. *See* 18 U.S.C. §3553(a)(1), (a)(2)(A), (a)(2)(B), (a)(2)(C), (a)(6). Furthermore, McBeath still has a substantial amount of his sentence remaining. *See* 18 U.S.C. § 3553(a)(2)(A), (a)(2)(B), (a)(6); *Ruffin*, 978 F.3d at 1008 (considering the amount of the sentence that the petitioner had served); *United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) ("the need to provide just punishment, the need to reflect the seriousness of the offense, and the need to promote respect for the law permit the court to consider the amount of time served in determining whether a sentence modification is appropriate"). Releasing McBeath with so much time remaining on his sentence "minimizes both the impact of [his] crime and seriousness of [his] offense." *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020). Having considered the factors set forth in section 3553(a) to the extent that they are applicable, the Court finds that any reduction in the term of imprisonment is not warranted.

Thus, even if steps one and two authorized the requested reduction, the Court finds that consideration of the applicable Section 3553(a) factors calls for denial of the Motion. *Jones*, 980 F.3d at 1102 (affirming decision to deny motion for compassionate release where "the district court found for the sake of argument that an extraordinary and compelling circumstance existed in [defendant's] case but that the § 3553(a) factors counseled against granting compassionate release"); *United States v. Pawlowski*, 967 F.3d 327, 330 (3d Cir. 2020) (affirming denial of a compassionate release motion where "the District Court reasonably concluded that several of the § 3553(a) factors—including … the need to reflect the seriousness of the offense, promote respect for the law, and afford adequate deterrence—counsel against compassionate release …").

### III.     CONCLUSION

Although the Court is sympathetic to McBeath's arguments regarding the fear of contracting COVID-19, the Court finds he has not satisfied the Section 3582 requirements. For the reasons stated above, the Court **DENIES** the Motion for Compassionate Early Release (Doc. No. 198).

**DONE** and **ORDERED** in Dayton, Ohio, this Wednesday, April 13, 2022.

s/Thomas M. Rose

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE